M COMPANY v CITY OF DETROIT

1. ZONING—ORDINANCES—VARIANCES—DELEGATION OF LEGISLATIVE POWER—CONSTITUTIONAL LAW.

A zoning ordinance which permits a board of zoning appeals to grant a variance where "modification is necessary to secure an appropriate development of a specific parcel of land" is not an unconstitutional delegation of legislative power; while such language is difficult to define in the abstract, where the power of the board is further limited by the provision that the "modification will not be inconsistent with the spirit and purpose of this ordinance, with public safety, and with substantial justice" it does provide a reasonable standard when applied to a known factual situation, and, when read in its proper context, there are sufficient standards against which the actions of the board can be gauged.

2. ZONING—BOARD OF ZONING APPEALS—FINDINGS OF FACT—EVIDENCE—SUFFICIENCY.

There was sufficient evidence to support a finding by a board of zoning appeals that a ratio of one parking space to every three apartments was adequate to handle the traffic volume for a senior citizens' apartment building where it was shown that in 12 similar projects for the housing of the elderly only about 30% of the residents owned an automobile, and the Court of Appeals will not disturb that finding.

3. ZONING—ORDINANCES—VARIANCES—PARKING SPACES.

The granting of a variance with respect to a zoning ordinance on the number of parking spaces that needed to be provided to permit the issuance of a building permit for an apartment building was not contrary to the spirit and intent of the ordinance where the evidence showed that a lesser number of parking spaces was required since the building was to provide low cost housing for senior citizens, where the owner of the building agreed to provide additional parking spaces if required, and where the board of zoning appeals recorded with the register of deeds an instrument indicating the variance was conditioned upon the use of the building as a home for the elderly.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 58 Am Jur, Zoning § 194 *et seq.*
[2] 58 Am Jur, Zoning § 225.

Appeal from Wayne, Horace W. Gilmore, J. Submitted Division 1 May 17, 1973, at Detroit. (Docket No. 15143.) Decided August 29, 1973.

Complaint by M Company, Detroit Medical Hospital, Incorporated, and Indian Village Manor Company against the City of Detroit and others for superintending control to prevent the issuance of a building permit with a zoning variance. Superintending control denied. Plaintiff M Company appeals. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Avern Cohn* and *John M. Kamins*), for plaintiff M Company.

*Michael M. Glusac,* Corporation Counsel, and *John F. Hathaway,* Assistant Corporation Counsel, for defendant City of Detroit.

*Barris, Sott, Denn & Driker* (by *Donald E. Barris* and *David L. Haron*), for defendant Slavik Builders, Inc.

Before: R. B. BURNS, P. J., and V. J. BRENNAN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. This is a zoning case. The building in question is a 472 unit, 14 story highrise apartment building, which was built for the express purpose of housing senior citizens. The building stands on a 4.65 acre plot at 7800 East Jefferson Avenue in Detroit, adjacent to the Detroit River and just north and east of the Belle Isle bridge. The land upon which the apartment was built was conveyed to the present owners by the United Auto Workers Union on the express condi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tion that low cost units be constructed for elderly tenants.

The developer of the apartment sought and was granted a variance by the Detroit Board of Zoning Appeals with respect to the number of parking spaces that needed to be provided. The normal number of parking spaces for apartment buildings of this size is one and one-fourth spaces per unit, or in this case 590 parking spaces. The board of zoning appeals granted a variance whereby only 159 spaces were required, or a 73% deficiency. Appellant fought the issuance of the building permit with that variance both before the board of zoning appeals and later in an action for superintending control in Wayne Circuit Court. From the denial of an order of superintending control appellant appeals.

The question on appeal, as it was below, is whether the board of zoning appeals properly granted the variance. Detroit Ordinance No. 62.0402(d) provides, in pertinent part, that the board may:

"Permit a modification in the required location of off-street parking facilities or in the amount of off-street parking facilities required, or both, if after investigation by the Board it is found that such modification is necessary to secure an appropriate development of a specific parcel of land; provided, that any such modification will not be inconsistent with the spirit and purpose of this Ordinance, with public safety, and with substantial justice."

Appellant asserts that the above-quoted ordinance constitutes an unconstitutional delegation of legislative power in that there is not a sufficiently defined set of definite standards governing the board of zoning appeals in its administrative task.

The nature of this provision of the ordinance must be viewed in the totality of the entire zoning ordinance. The ordinance provides a base-line figure with respect to the number of parking spaces that should be provided for various type of buildings. Recognizing that such a figure can represent, at best, the average needs in a typical situation, the ordinance wisely provides a means by which the board could vary those requirements to meet the particular situation. The board does not have unfettered discretion in granting these variances. In order to grant the variance the board must ascertain that the "modification is necessary to secure an appropriate development of a specific parcel of land". The power of the board is further limited by the provision that the "modification will not be inconsistent with the spirit and purpose of this ordinance, with public safety, and with substantial justice".

Appellant's assertion that the language "necessary to secure an appropriate development" is not sufficiently precise to provide a reasonable guideline fails to view the language in its proper context. While such language is difficult to define in the abstract, it does provide a reasonable standard when applied to a known factual situation. The exact nature and intent of the language is further defined by reference to the provisions setting forth the "spirit and purpose" of the ordinance. While administrative bodies cannot be granted unfettered discretion to undertake their duties without reasonable legislative guidelines, neither must those bodies be shackled by unnecessarily precise and immutable standards where the legislative body has deferred the application of those standards to the administrative body's expertise. We find that here there are sufficient standards

against which the actions of the board can be gauged.

Appellant next argues that, assuming the ordinance is constitutional, the board's determination was contrary to both the spirit of the ordinance and the evidence presented. A review of the record reveals that there was evidence that in 12 similar projects for the housing of the elderly only about 30% of the residents owned an automobile. There was evidence that a ratio of one parking space to every three apartments was adequate to handle the resulting traffic volume. The validity of that evidence is a question of fact which was properly addressed to the board. Since there was sufficient evidence to support the board's finding that the 159 spaces would be adequate, this Court will not disturb that finding.

As to whether the board's determination was contrary to the spirit and intent of the ordinance, the answer is clearly "no". Assuming as we must that the 159 spaces are adequate to meet the needs of the residents without creating congestion on the streets, the variance as granted was indeed "necessary to secure an appropriate development of * * * (the) land". The evidence showed that in order to park the number of automobiles required by the ordinance either virtually all of the available land would have to be used or a multistory parking structure would be needed. There can be nothing which is less appropriate to the development of low cost housing than to burden it with the unnecessary expense of unneeded parking facilities.

Appellant's fear that the property might be sold and be used by persons other than the elderly and therefore bring about a situation whereby the present parking facilities are not sufficient is not

well founded. Both the board and the lower court evidenced a willingness to reconsider the matter if such an eventuality occurred. The board took the further precaution by recording with the register of deeds an instrument indicating the variance was conditioned upon the use of the building as a home for the elderly. It should be noted that the owner of the apartment agreed on the record to provide additional parking spaces, if required. Under these circumstances it would appear that adequate provisions have been made to safeguard the community against this possible future change.

Appellant's arguments with respect to alleged bias and undue influence have been reviewed and found lacking. The findings by the lower court in those respects are supported by the record and will not be disturbed on appeal.

Affirmed. No costs, a public question being involved.

All concurred.